**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Omero ORTIZ–LOPEZ, Defendant–Appellant.**

**No. 93–30253.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1994.

Decided May 16, 1994.

Paula Semmes Deutsch, Asst. Federal Public Defender, Seattle, WA, for defendant-appellant.

Lis Wiehl, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellee.

Before: WRIGHT, TANG and REINHARDT, Circuit Judges.

Opinion by Judge WRIGHT.

EUGENE A. WRIGHT, Circuit Judge:

Omero Ortiz–Lopez appeals his conviction for reentering the United States illegally after having been previously deported, in violation of 8 U.S.C. § 1326(b)(1) and (2). We find that his indictment did not violate the Speedy Trial Act but reverse his conviction because there was insufficient evidence to prove he was an alien.

## BACKGROUND

In early December 1992, the INS discovered through a routine check that Ortiz–Lopez was incarcerated in the Skagit County Jail. On December 15, 1992, INS Agent Essing interviewed Ortiz–Lopez at the jail, after giving him *Miranda* warnings.

Before the interview, Essing had called the United States Attorney's Office in Seattle about the possibility of prosecuting Ortiz–Lopez for illegal reentry. That office gave him a checklist of all the documents it would need to consider a case for criminal prosecution. Essing brought the checklist to the interview.

He spoke with Ortiz–Lopez again on January 6, 1993. He told him that the U.S. Attorney had not yet decided whether to prosecute. He also served an order to show cause and took Ortiz–Lopez into administrative custody, pending a civil deportation hearing.

That hearing was held on January 21. The Immigration Judge ordered Ortiz–Lopez deported. On the following day, the U.S.

Attorney filed a criminal complaint and arrested him. The grand jury issued a three-count indictment on February 17.

At trial, the government offered evidence that the INS had served Ortiz–Lopez with orders to show cause on five separate occasions between July 1987 and January 1993. Each incident resulted in an order of deportation. Ortiz–Lopez moved to exclude statements he made at two deportation hearings (October 1992 and January 1993). The court granted the motion because Ortiz–Lopez was not told his *Miranda* rights on those occasions. The court, however, admitted in evidence the orders to show cause and the deportation orders.

## ANALYSIS

### 1. The Speedy Trial Act.

Ortiz–Lopez argues that the district court should have dismissed the charges against him because more than 30 days elapsed between his civil deportation arrest on January 6, 1993, and his indictment for illegal reentry on February 17, 1993. The government counters that the 30–day period did not begin until it made the arrest on January 22, 1993.

We review for clear error factual findings concerning the Speedy Trial Act. *United States v. Cepeda–Luna*, 989 F.2d 353, 355 (9th Cir.1993). We review de novo the district court's interpretation of the Act. *Id.* The Act reads, in part:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b).

█ In *Cepeda–Luna* we squarely decided the issue raised and said:

> The language of the Speedy Trial Act compels the conclusion that its provisions do not apply to civil detentions. The thirty-day requirement applies to an indictment issued in connection with the offense for which the defendant was arrested. 18 U.S.C. § 3161(b). 'Offense' is further de-

fined as 'any Federal *criminal* offense.' 18 U.S.C. § 3172(2) (1988).

*Id.* at 355 (emphasis in original). As in *Cepeda–Luna,* the INS originally detained Ortiz–Lopez on civil deportation charges, not criminal ones.

■ Although the Speedy Trial Act does not apply to civil deportation arrests, the rule is not absolute. *Id.* at 357. The Act may apply "to civil detentions which are mere ruses to detain a defendant for later criminal prosecution." *Id.* Ortiz–Lopez argues that his case falls under this exception. He says that the INS was "working hand-in-hand with the criminal authorities in detaining [him] for the purpose of a federal criminal prosecution." He also says that his arrest on January 6, 1993, was "merely a formality employed to keep [him] in custody while the criminal complaint ... was prepared." His argument lacks merit.

■ "The fact that criminal authorities may have played some role in [an] initial detention does not necessarily mandate the application of the Speedy Trial Act to civil detentions." *Id.* at 356 (*citing inter alia United States v. Orbino,* 981 F.2d 1035, 1036–37 (9th Cir.1992) ("fact that federal prosecutors 'kept a sharp eye' on civil immigration proceedings does not trigger Speedy Trial clock")). As in *Cepeda–Luna,* the district court found no evidence of collusion between federal criminal and civil authorities. *Id.* at 358.

Moreover, this civil arrest was not a mere formality. The INS had a valid reason to detain Ortiz–Lopez—the order to show cause and the deportation proceeding. His civil detention was unrelated to the criminal charges. *Id.* at 356. The overlapping criminal investigation did not trigger the Speedy Trial Act. The trial court did not err.

**2. Sufficiency of Evidence.**

Ortiz–Lopez argues that evidence of his prior deportations was insufficient to prove alienage.[1] Because he did not ask the trial court for an entry of judgment of acquittal under Fed.R.Crim.P. 29(a), we review for plain error. *United States v. Lancellotti,* 761 F.2d 1363, 1367 (9th Cir.1985). "A plain error is a highly prejudicial error affecting substantial rights." *United States v. Dischner,* 974 F.2d 1502, 1515 (9th Cir.1992) (citations omitted); *see also* Fed.R.Crim.P. 52(b). We should correct a plain error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (citations and quotation marks omitted).

The elements of violating 8 U.S.C. § 1326 are: 1) the defendant is an alien; 2) he was arrested and deported or excluded and deported; and 3) thereafter, he improperly entered, or attempted to enter, the United States. *United States v. Meza–Soria,* 935 F.2d 166, 168 (9th Cir.1991). The only evidence the government introduced at trial to prove Ortiz–Lopez was an alien were the five orders to show cause and deportation orders from his prior deportation hearings.[2]

■ In *Meza–Soria,* "the district court admitted evidence from Meza–Soria's father which tended to show that Meza–Soria was a United States citizen rather than an alien." *Id.* at 167. The court later determined that the evidence was inadmissible because the defendant's prior deportation proceeding established his alienage. It held that Meza–Soria was collaterally estopped from challenging his alienage and granted a mistrial. *Id.*

We reversed and held that factual findings in a prior deportation proceeding, where the

1. He also argues that the district court erred in admitting the orders to show cause and the deportation orders because they were the fruit of unwarned statements. He says that although the court ruled only that his statements made at the October 1992 and January 1993 hearings were in violation of *Miranda,* "[m]ost probably, the warnings which preceded [his] statements made during the three other deportation hearings were also in violation of *Miranda.*" We need not decide this issue.

2. An order to show cause is the charging document underlying a deportation order. The district court admitted the orders to show cause but gave a limiting instruction to the jury. The judge said the orders were admitted only as a charging document and they do not establish or tend to establish the truth of the allegations they contain.

burden of proof is clear and convincing, "do not establish the alienage element in later criminal prosecutions." *Id.* at 170. We said the "difference in burdens of proof alone should demonstrate that it would be quite improper to establish the alienage element of the reentry offense through the use of factual findings in the deportation hearing." *Id.* at 169.

The government would limit *Meza–Soria* to the collateral estoppel context. It argues that *Meza–Soria* "does not stand for the proposition that the fact of a prior deportation cannot establish the element of alienage in a criminal trial, only that it should not be viewed as conclusive (and therefore uncontrovertible) evidence at a later criminal trial." According to the government, it only "gives the defendant the right to present evidence to counter the fact of a previous deportation."

We disagree. The government's theory ignores the underlying premise in *Meza–Soria*—the difference in burdens of proof between criminal trials and civil proceedings. And, it shifts the burden of proof to Ortiz–Lopez. *See id.* at 170 (defendant is "entitled to put the government to its proof on the issue of alienage"). Moreover, allowing deportation orders to establish the element of alienage in a later criminal trial would eviscerate the element altogether. It would impose criminal liability for "any person" who has been previously deported and reenters the United States. But the statute imposes criminal liability only on "any alien" who reenters after deportation. 8 U.S.C. § 1326(a) and (b).[3]

■ Under *Meza–Soria*, no reasonable jury could have found beyond a reasonable doubt, and solely on the basis of the deportation orders, that Ortiz–Lopez was an alien. *See United States v. Dischner*, 974 F.2d at 1516 (there is sufficient evidence if, viewing it in the light most favorable to the government, any reasonable jury could find the elements of the crime beyond a reasonable doubt). And, this was the *only* evidence the

government offered to prove alienage. Absent this evidence, the jury would not have convicted him. In this context, we find a highly prejudicial error affecting Ortiz–Lopez' substantial rights. *See Olano*, —— U.S. at ——, 113 S.Ct. at 1778 (plain error affects substantial rights if it affected the outcome of the proceeding).

**REVERSED.**

---

**3.** We also decline to distinguish *Meza–Soria* based on the fact that there are five deportation orders, rather than one. The findings of alienage in all Ortiz–Lopez' prior deportation proceedings were made under the clear and convincing stan-

dard. All we know is that in each hearing, the evidence established Ortiz–Lopez' alienage under that standard, but not beyond a reasonable doubt. In fact, in each case the evidence may well have been identical.